UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KG DONGBU USA, INC. ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-27 C/W 23-6912** |
| **PANOBULK LOGISTICS, INC. ET AL** | **SECTION "L" (4)** |

## ORDER AND REASONS

Before the Court are four motions for partial summary judgment. Cooper Consolidated, LLC is movant for two of the motions. R. Docs. 39, 83. Coastal Cargo Company, LLC and Marquette Transportation Company, LLC also independently move for partial summary judgment. R. Docs. 49, 80. The parties have submitted various oppositions and reply briefs. R. Docs. 92, 93, 94, 95, 96, 99, 103, 105, 108. The Court heard oral argument on these matters on March 7, 2024. Considering the briefing, applicable law, and oral argument, the Court now rules as follows.

I.    BACKGROUND

a.  Factual Background

This maritime case arises out of alleged damage to a cargo of steel coils. On or about October 31, 2021, KG Dongbu Steel Co., Ltd. shipped a cargo of 140 steel coils—consigned to Plaintiff KG Dongbu USA, Inc. ("KG Dongbu")—from Korea to New Orleans. R. Doc. 1 at 2. SK Shipping Co., Ltd. ("SK Shipping") was hired as the ocean carrier and pursuant to that contract, it was responsible for discharging the coils from the ship to one or more barges in New Orleans. *Id.* In another contract, KG Dongbu hired defendant Panobulk Logistics, Inc. ("Panobulk")—as an intermediary forwarder—to transport the coils from New Orleans to Illinois and Ohio. *Id.* at 3. Panobulk then hired defendant Cooper Consolidated, LLC ("Cooper") via a Barge Transportation

1

Agreement ("BTA") to transport the coils by barge from New Orleans to Lemont, Illinois. *Id.*; R. Doc. 39 at 2. Under the BTA, Cooper provided Barge LTD-237 to be loaded with the coils. R. Doc. 1 at 3; R. Doc. 39 at 2. That barge was supplied by Marquette Transporation LLC to Cooper under a separate agreement.[1] Panobulk and SK Shipping hired defendant Coastal Cargo Company, LLC ("Coastal") to offload the coils from the ocean vessel onto the barge. R. Doc. 1 at 3; R. Doc. 39 at 2. On or about January 5, 2022, KG Dongbu alleges that the were in good order and condition. R. Doc. 1 at 3. KG Dongbu further alleges that Panobulk and Cooper agreed to deliver the coils in the same conditions as when they received it for carriage. *Id.*

Upon its information and belief, KG Dongbu alleges that Coastal pierced the hold of the barge while loading the coils, which allowed river water to enter the hold and damaged the coils. *Id.* As a result, they were rejected by the buyers. *Id.*

Plaintiffs KG Dongbu and DB Insurance Co., LTD ("DB Insurance"), as subrogee of KG Dongbu, filed suit against Defendants Panobulk, Cooper, and Coastal on January 4, 2023, for maritime tort. They also filed a claim for breach of maritime contract, warranty, and bailment against Panobulk. *Id.* at 1, 4. Plaintiffs seek damages of $2.8 million plus survey, inspection, and salvage expenses, court costs, interest, and attorneys' fees. *Id.* at 5.

### b. Affirmative Defenses to Plaintiffs' Claims

All defendants claim a number of affirmative defenses to Plaintiffs' claims. Coastal asserts defenses including (1) failure to state a claim upon which relief can be granted, (2) failure to mitigate damages, and (3) comparative fault and contributory negligence. R. Doc. 8. Cooper asserts that Plaintiffs' claims are barred due to the BTA between Cooper and Panobulk. R. Doc. 9.

---

[1] Cooper obtained the barge from CGB Barge Department under a freight agreement, who obtained it from LMR Freight, LLC under another freight agreement. R. Doc. 49 at 2. In its motion for partial summary judgment, Marquette explains that it provides services to LMR for barges that LMR manages. In this instance, Marquette moved Barge LTD-237 from New Orleans to Illinois. *Id.*

Panobulk asserts defenses including (1) failure to state a claim upon which relief can be granted, (2) failure to mitigate damages, and (3) comparative fault and contributory negligence. R. Doc. 16.

Additionally, each defendant has asserted cross-, counter-, and/or third-party claims, which—along with the responses—are briefly discussed below.

### c.   Cross-, Counter-, Third-Party Claims

Cooper and Panobulk filed cross-claims against one another for contractual indemnity as well as tort-based contribution. R. Docs. 9, 16. Both defendants additionally filed the same cross-claims against Coastal. R. Docs. 9, 16. Coastal brought a separate action for contribution and indemnity against Cooper and Panobulk, which was then consolidated with this mater. R. Doc. 65.

On September 12, 2023, this Court granted Coastal's motion for leave to file a third-party complaint against Marquette. In response, Coastal filed its claims for contribution against Marquette, which then "tendered Marquette as a defendant to Plaintiffs' Complaint" pursuant to Fed. R. Civ. P. 14(c). R. Doc. 49 at 3, R. Doc. 33. Coastal further alleged that Marquette was the owner/operator of Barge LTD-237, Cooper received the barge from Marquette, and that Marquette failed to provide a seaworthy barge. R. Doc. 33.

Accordingly, Marquette filed cross- and counter-claims against Coastal and a cross-claim against Panobulk for contractual indemnity and tort-based contribution. R. Doc. 37. In reply, Panobulk also filed a cross-claim against Marquette alleging that Marquette is liable for the damage due to its negligent operation of the barge. R. Doc. 70. Additionally, it claims that Marquette is liable to Panobulk for indemnity. *Id.*

Presently, there are four motions for partial summary judgment pending before the court. All of these motions focus on the question of whether a package limitation clause found in the BTA is enforceable. The issue of liability or the lack thereof is not before the Court at this time.

## II.     PRESENT MOTIONS

### a.  Cooper's First Motion for Partial Summary Judgment

In its motion, Cooper argues that if it is liable for the damaged coils, it is limited to no more than $500 per coil pursuant to the package limitation provisions found in the BTA it has with Panobulk. R. Doc. 39-1 at 4; *see* R. Doc. 39-2 at ¶¶ 24, 42. It argues that the provisions in the BTA are valid, enforceable, and not subject to the Harter Act, because it is a private contract of affreightment. R. Doc. 39-1 at 4-8. Cooper additionally argues that the limitation applies to both Panobulk's and Plaintiffs' claims against it pursuant to the Supreme Court's decision in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2014). *Id.* at 8-11. Lastly, Cooper argues that the limitation is not avoided though some of the claims against it are in tort. *Id.* at 11.

Both Plaintiffs and Panobulk oppose Cooper's motion. Plaintiffs begin their opposition by detailing the barge damage and procedures taken by Cooper and others in response. R. Doc. 103 at 1-16. They stress that they were untimely notified about the water damage. *Id.* They argue that the BTA is not enforceable against them because it is an agreement between Cooper and Panobulk. *Id.* at 16-20. To strengthen that claim, they aver that the Court's decision in *Kirby*—that the limitation provisions are enforceable against upstream parties—is only applicable in instances of common carriage. *Id.* at 22-27. Here, they point out that the contracts governing this matter are private; thus, *Kirby* is inapplicable. *Id.* Regardless of the BTA, Plaintiffs further argue that Cooper is liable to them in tort, due to its breach of warranty of seaworthiness. *Id.* at 27-33.

In Panobulk's opposition, it first argues that the BTA is ambiguous and that ambiguities are to be interpreted against the drafter—Cooper. R. Doc. 92. It provides that there are two clauses in the BTA that discuss limitations of liability: Paragraph 24 and Paragraph 42, which state:

> 24. Cargo Liability. Carrier's liability for cargo loss or damage shall be limited to a maximum of $500.00 per ton on bulk cargo or $500 per unit

4

or package subjected to count.

. . .

      42. Cargo Risk; Limitation of Liability. Carrier shall have no liability for loss or damage to cargo, or for direct or indirect expenses or claims arising from or related to such loss or damage, until proper loading is complete, and the barge has been removed from loading facility by Carrier or its designated carrier. Thereafter, Carrier shall only be liable to Shipper for loss or damage to the cargo which occurs during the voyage. In no event shall Carrier be liable for loss or damage to the cargo caused, in whole or in part, by: shrinkage, expansion, deterioration, or other changes in condition due to temperature changes, atmospheric humidity, or other natural causes; or navigational delays; or any vice or defect in the cargo. In the event of such loss or damage for which Carrier is liable, Carrier shall pay for lost cargo based on actual value at time of loss, and damaged cargo based on actual loss in value measured at time such damage occurred, up to a maximum limit of $500.00 per ton on bulk cargo or $500 per unit or package subjected to count. . . .

R. Doc. 39-2 at ¶¶ 24, 42.

It argues that if Paragraph 24 were to apply to all claims for loss and/or damage, then Paragraph 42 would not be necessary. Accordingly, it avers that "construed together, the only conclusion is that the intent was to delineate the causes of damage or loss for which Cooper would be able to limit its liability." R. Doc. 92 at 14. Thus, it argues that the provision should be construed against Cooper to strictly limit the scope of the provision. Second, Panobulk argues that it did not have a "fair opportunity" to declare a cargo value in excess of $500 per package. Third, it argues that this contractual provision is unenforceable because Cooper "unreasonably deviated" from its obligations under the contract by failing to timely (1) inspect the damage to the barge, (2) notify Panobulk, and (3) repair the barge. *Id.* at 17. Fourth, it argues that Cooper breached its warranty of seaworthiness that it owed to Panobulk under general maritime law. Like Plaintiffs do in their opposition, it next argues that *Kirby* does not apply because this was a contract for private carriage. Lastly, Panobulk argues that Cooper's actions after learning that the barge was damaged rose to the level of negligence, gross negligence and/or intentional misrepresentation, which cannot be

resolved at the summary judgment stage.

In reply, Cooper raises five arguments to the oppositions against them. R. Doc. 108. First, Cooper argues that the package limitation provisions are unambiguous and apply to the losses described herein. Second, Cooper reiterates its earlier argument that the limitation provision is enforceable against the Plaintiffs under *Kirby*. Third, Cooper argues that that Panobulk was not entitled to an opportunity to declare a higher value in a private contract of affreightment because that is a condition of COGSA, which it argues is inapplicable to contracts for inland transport. Fourth, Cooper argues that there was no "unjustifiable deviation" on the part of Cooper such that the package limitation would be void. *Id.* Fifth, it argues that Plaintiffs and Panobulk's claims of unseaworthiness and negligence on the part of Cooper are not relevant to the issue presently before the court—whether a contractual limitation of liability applies.

### b. Marquette's Motion for Partial Summary Judgment

In its motion, Marquette raises the same arguments as Cooper for enforcing the limitation provisions in the BTA with two exceptions. R. Doc. 80. First, it argues that Paragraph 26 of the BTA is a "Himalaya Clause" because it extends the BTA's provisions to downstream parties involved in executing the contract. *Id.* at 11. Paragraph 26 provides that the "Carrier Party" to the BTA includes Cooper and "its affiliates and its and their employees, vendors, vessels, contractors, subcontractors at any tier or agents." *Id.* Accordingly, it argues that the BTA not only limited Cooper's liability but also that of Marquette. Second, it argues that the limitation provision further limits the contribution and indemnity claims Coastal and Panobulk have asserted against it. In all other aspects, Marquette raises the same arguments as Cooper regarding the validity of the BTA, its enforceability against Plaintiffs' subject to *Kirby*, and that tort claims against it are also subject to the BTA limitation provision.

Plaintiffs, Panobulk, and Coastal oppose Marquette's motion. Because Plaintiffs opposed both Cooper's first motion and Marquette's motion in the same brief, the same arguments apply. R. Doc. 103. Regarding Marquette specifically, Plaintiffs argue that it is not subject to the BTA's limitation provision because that provision only limits the liability of the "Carrier" not the "Carrier Party." It argues that while Marquette may fall under the "Carrier Party," Cooper is the sole "Carrier." Thus, it argues that the limitation provision does not extend to Marquette. *Id.* at 20-22.

In Panobulk's opposition, it also raises the argument about the discrepancy between "Carrier" and "Carrier Party" in the BTA's limitation clause. R. Doc. 93 at 6-7. It reiterates its arguments in its opposition to Cooper's motion regarding contractual ambiguity, the inapplicability of *Kirby*, and the lack of contractual negotiations about the limitation provisions. *Id.* at 10. Lastly, it argues that Marquette's actions rose to the level of negligence, gross negligence, and/or intentional conduct such that it is liable in tort. *Id.* at 12, 14-17.

In its opposition, Coastal argues that even if the limitation provision does apply to Marquette's liability, the motion should be denied to the extent that it seeks to apply the limitation to Coastal's contribution claims. R. Doc. 95 at 1. It additionally adopts the arguments that it makes in its opposition to Cooper's second motion for partial summary judgment discussed below. *Id.*

In reply, Marquette raises the same five arguments as Cooper, described above, and reiterates its earlier argument that the package limitation applies to it as well.[2]

### c.  Cooper's Second Motion for Partial Summary Judgment

In its second motion for partial summary judgment, Cooper also seeks to apply the BTA's limitation provision against Coastal's claims for contribution and indemnity against it. R. Doc. 83-1 at 4. It argues that Coastal does not have any separate claims against Cooper except for its claims

---

[2] Cooper and Marquette filed a combined reply brief to the oppositions of Panobulk, Plaintiffs, and Coastal. R. Doc. 108.

due to their alleged joint tortfeasor liability to Plaintiffs, which it avers is capped by the package limitation. *Id.* at 4-5. It argues that the contractual limitation provision is "essentially equivalent" to the COGSA package limitation; thus, it should afford the same protection because it had no independent contract with Coastal. *Id.* at 6.

In opposition, Coastal argues that even if Cooper's first motion and Marquette's motion are granted, that decision should not preclude Coastal from seeking contribution from Cooper and Marquette to the full extent of their proportionate fault. R. Doc. 95 at 2. Otherwise, Coastal argues that it will be liable for a disproportionate share of the damage to the coils. *Id.* at 2, 13-14. Coastal further argues that Cooper and Marquette cannot limit Coastal's rights based on the BTA, because it was not a party to that contract. Lastly, it argues that the contractual limitations between a plaintiff and another defendant do not limit another codefendant's contribution claims. *Id.* at 8.

In reply, Cooper agrees that courts have found that certain procedural defenses cannot bar claims for contribution by another defendant. R. Doc. 108. However, they aver that courts distinguish between procedural and substantive defenses to a contribution claim. Here, they argue that the package limitation is a substantive defense, and should apply to the contribution claims to the same extent it applies to plaintiffs' original claims. They further argue that allowing Coastal to circumvent the package limitation would also create an inequitable result as it would essentially void their contracted-for limitation of liability.

### d.  Coastal's Motion for Partial Summary Judgment

In its motion, Coastal presents a novel legal issue and argues that should the Court grant Cooper's first motion, then it should also apply the *McDermott, Inc. v. AmClyde* rule and reduce the claims against it by Cooper's proportionate share of damages. 511 U.S. 202 (1994); R. Doc. 49-1. It argues that in *AmClyde*, the Supreme Court discussed the issue of liability of non-settling

8

parties in a maritime matter where some of the defendants settled and held that the plaintiff's recovery from the non-settling defendants should be reduced by the settling defendants' percentage of fault. Though *AmClyde* discussed the effects of a settlement agreement, Coastal argues that this court should apply the same reasoning here because the consequences of the limitation provision in the BTA between Cooper and Panobulk on Coastal would produce similar results as if Cooper and Panobulk were settling instead.

Panobulk and the Plaintiffs oppose Coastal's motion. Panobulk argues that limitation provision in the BTA is invalid and unenforceable. R. Doc. 94 at 2. It further argues that *AmClyde* is inapplicable here because the issues involved here do not concern a settlement agreement and Panobulk received no benefit from having a limitations provision in the BTA. *Id.* at 2-4. Panobulk avers that even if *AmClyde* were to apply to this case, it would not obviate contribution claims as other claims would still be outstanding. *Id.* at 5-6. Additionally, it raises the same argument about the applicability of *Kirby* as it did in its opposition to Marquette's motion. *Id.* at 5.

In their opposition, Plaintiffs argue that *AmClyde* is only applicable in the context of a settlement or where similar actions have been taken to extinguish the case. Plaintiffs argue that it has not taken either action with any of the defendants. R. Doc. 99. Further, they argue that the BTA's provisions are not binding on them. Even if *AmClyde* was applicable, and Plaintiffs were bound by the BTA, they aver that they would still have tort claims against all defendants. *Id.* at 9.

In response, Coastal highlights that its motion is moot if Cooper and Marquette's liability is not limited. R. Doc. 105. Though no settlement discussions have begun with the parties, it argues *AmClyde* is still relevant because in that case, the Court reduced the share of fault assigned to all five defendants even though only three of them settled with the plaintiff. The fourth defendant had a contractual limitation provision with the plaintiff. Coastal argues that the Supreme Court

accordingly reduced the liability of the fifth defendant by all other defendants' proportionate fault. Here, Coastal currently seeks this Court to apply the principles that the Supreme Court did with the fourth and fifth defendant in *AmClyde* to reduce Coastal's proportionate fault if the Court finds that Cooper and Marquette's liability is limited under the BTA's provisions.

### III.   APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c*); Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

### IV.   ANALYSIS

Because the fate of all four motions hinges on Cooper's first motion, the Court begins its discussion on whether the package limitation provision in the BTA is enforceable.

#### a. Whether Cooper Can Enforce the Package Limitation Provision Against Panobulk

Cooper argues that the limitation provision is enforceable against Panobulk because Panobulk agreed to the express terms of the BTA and that neither COGSA nor the Harter Act render the provision invalid. *Id.*

As stipulated by both Cooper and Panobulk in their briefings and at oral argument, the Court finds that the BTA is a contract for private carriage rather one of common carriage. Further, it governed the inland shipping of the coils. As such, the Court finds that the Carriage of Goods by Sea Act ("COGSA") does not apply to the instant matter. *See* 46 U.S.C. §30701 (COGSA applies to "contract[s] for the carriage of goods by sea to or from ports of the United States, in foreign trade."). COGSA is a legal regime based on statutes, locality, and peculiar risks of the sea. To extend it to the particularities of this dispute would be a bridge too far. However, in this case, the $500 package limitation was included in the BTA between Cooper and Panobulk.

Panobulk argues that the limitation provision is unenforceable because it was never given a fair opportunity to negotiate the value of the limitation provision. The Court rejects this argument because that opportunity arises from COGSA. The Court further notes that the evidence presented by the parties indicates that an identical limitation provision was included in previous years' transportation agreements between Panobulk and Cooper. At the very least, this suggests that Panobulk was on notice of this provision when it entered into the BTA and could have addressed its concerns at that time. It failed to do so and voluntarily signed the BTA with Cooper containing the limitation clause.

Additionally, given that the BTA lacked any provisions mentioning the Harter Act, the Court finds that the Harter Act does not apply to the instant matter. *See Kerr-McGee Corp. v. L.*, 479 F.2d 61, 64 (4th Cir. 1973) (holding that the Harter Act only applies to common carriage unless specifically incorporated into the agreement).

Next, Panobulk argues that the terms of the BTA were ambiguous such that it is invalid. *Id.* Determining whether the language of a contract is ambiguous is a question of law. The Court finds that general maritime law applies to the instant case. Maritime agreements "must be

construed like any other contracts: by their terms and consistent with the intent of the parties*.*" *Kirby*, 543 U.S. at 31. "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.'" *M&G Polymers US, LLC v. Tackett*, 574 U.S. 427, 435 (2015) (internal quotation omitted). While Panobulk argues that the inclusion of two provisions on the limitation of liability renders the agreement ambiguous, the Court disagrees. Paragraphs 24 and 42 both explain that in instances where Cooper may be liable for damage to cargo, Cooper's liability is limited to $500 per unit. While Paragraph 24 states this limitation generally, Paragraph 42 provides context for when the limitation applies. Accordingly, the Court finds that the BTA is unambiguous.

Panobulk additionally argues that Cooper's actions "unreasonably deviated" from the BTA such that the provision is void. *Id.* It alleges that Cooper made several errors after it learned that water entered the barge, including its untimely notice to Panobulk regarding the water intrusion. Accordingly, Panobulk argues that this conduct was so egregious that it voided the BTA's limitation provisions. The Court disagrees.

At present, the Court is not tasked with deciding the issue of liability. Of note, however, this Court has previously held that "[i]t is established beyond dispute that negligence in the performance of [the carrier's] duties, and even gross negligence and wanton and willful misconduct, although they may impose liability upon the carrier, do not constitute deviations, with the effect of voiding either a contractual or statutory limitation of liability." *Cera-Tech, S.A. v. ALLISON LYKES*, No. 90-2093, 1991 WL 94178, at *10 (E.D. La. May 30, 1991). Further, as Cooper correctly indicates, the doctrine of deviation is only applicable in limited circumstances, such as geographic deviation or unauthorized on-deck stowage of cargo. *See Sedco, Inc. v. S.S. Strathewe*, 800 F.2d 27 (2d Cir. 1986) (noting that the doctrine is limited to geographic deviation

or unauthorized storage of cargo). Finding that neither of those circumstances are of relevance to the instant matter, the Court declines to entertain this argument.

Similarly, Panobulk raises arguments about the negligent acts of Cooper after it discovered water in the barge and whether Cooper breached its warranty of seaworthiness. Because these contentions concern liability and fault instead of enforcement of the liability provision, the Court need not address them at this time.

Because the BTA contained a package limitation provision and that both parties expressly agreed to the terms in the BTA, the Court finds that Cooper is entitled to enforce the provision against Panobulk.

### b. Whether Cooper Can Enforce the Package Limitation Provision Against Plaintiffs

Cooper additionally seeks to enforce the BTA's liability provision against Plaintiffs KG Dongbu and DB Insurance. Cooper's entire argument rests on *Kirby*, where the Supreme Court held that carriers can enforce limitation provisions found in a contract between a carrier and an intermediary forwarder, against both upstream and downstream parties. 543 U.S. 14. In opposition, Plaintiffs argue that *Kirby* is only applicable in contracts for common carriage.

In *Kirby*, an Australian manufacturing company, James N. Kirby, Pty Ltd. ("Kirby") sold 10 containers of machinery to General Motors, to be delivered to Huntsville, Alabama. Kirby then hired freight forwarding company International Cargo Control ("ICC") to arrange for the delivery of the containers. *Id.* at 18-19. This was formalized in a bill of lading with the following designations: Sydney, Australia as the port of loading, Savannah, Georgia, as the port of discharge, and Huntsville as the destination of delivery. *Id.* at 19. The ICC bill contained two provisions—sea and land—that limited the liability of ICC along the journey. *Id.* at 19-20. The sea limitation

provision was governed by COGSA's default liability rule[3] whereas for the land provision, the bill limited the liability to a slightly higher amount. *Id.* The bill additionally contained a "Himalaya Clause" to benefit downstream parties.[4] *Id.* at 20. ICC then hired German ocean shipping company Hamburg Süd[5] to transport the containers, which was formalized in another bill of lading. *Id.* at 21. The Hamburg Süd bill contained the same designations, adopted the COGSA limitation rule for sea transport, and a Himalaya Clause for its downstream parties. *Id.* Additionally, that bill contained a clause restricting liability "beyond the tackles" so that the COGSA limitation applied to the land portions of transport as well. Hamburg Süd then hired Norfolk Southern Railway Company ("Norfolk") to transport the machinery from Savannah to Huntsville. *Id.* The incident giving rise to the suit occurred when the Norfolk train carrying the machinery derailed during transport causing $1.5 million in alleged damages. *Id.* When Kirby sued Norfolk to recover its loss, Norfolk argued—among other things—that Kirby's potential recovery from Norfolk was limited to the provisions set forth in the two bills of ladings. The Supreme Court agreed.[6]

The Court first discussed the enforceability of the limitation provision in the ICC bill. *Id.* at 30. The Court focused on the expansive language of the bill's Himalaya Clause and whether Norfolk would be an intended beneficiary of that clause. Because the Clause provided that "any servant, agent, or other person (including any independent contractor)" could benefit from the

---

[3] COGSA's default package limitation provides that "neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States. . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." 46 U.S.C. App. § 1304(5).

[4] The Himalaya Clause states "[t]hese conditions [for limitations on liability] apply whenever claims relating to the performance of the contract evidenced by this [bill of lading] are made against any servant, agent, or other person (including any independent contractor) whose services have been used in order to perform the contract." *Id.* at 20-21.

[5] The full name of this company is Hamburg Südamerikanische Dampfschiffahrts-Gesellschaft Eggert & Amsinck. *Id.* at 21.

[6] This court notes that the Supreme Court in *Kirby* also discussed whether federal law governed the interpretation of the ICC and Hamburg Süd bills. Because that is not of issue in the instant matter, this Court need not discuss that section of *Kirby* further.

limitation provision, the Court found Norfolk to be an intended beneficiary of the clause as ICC's sub-subcontractor responsible for the land transport of the machinery. *Id.* at 30-32. The Court also took into consideration that the ICC bill contained a higher limitation amount for the land transport. Thus, it held that Norfolk's liability was limited by terms of the ICC bill.

Discussing the validity of the limitation in the Hamburg Süd bill presented a more difficult challenge for the Court as the liability of Norfolk would be lowered even further than that of the ICC bill. *Id.* at 32. This is because the Hamburg Süd bill extended the COGSA default rule to the land transport. To reach its decision, the Court cites its previously stated rule on common carriage, which provides "when an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Id.* at 33. The Court notes that this rule does not suggest that an intermediary is always a cargo owner's agent; however, "when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages." *Id.* Importantly, the Court stressed that while Norfolk is entitled to the protections of both bills, it "recognize[d] that our decision does no more than provide a legal backdrop against which future bills of lading will be negotiated." *Id.* at 36.

Here, while contractual relationships between the parties are similar, Cooper attempts to extend *Kirby* to private contracts. *Kirby* stands for the proposition that downstream parties can enforce upstream the package limitation provisions found in contracts for *common carriage*. However, the present BTA is a contract for private carriage. This Court concludes that *Kirby* is limited to contracts of common carriage.[7] Thus, under *Kirby*, Cooper is not entitled to extend the BTA's liability provision against Plaintiffs.

---

[7] The Court stresses that in reaching this conclusion, it did not consider Section II of *Kirby* for reasons mentioned in n.6. Thus, this Court presently declines to take any position on the enforceability of Section II on private contracts.

This Court is not inclined to hold otherwise for public policy reasons as well. Unlike private carriers, common carriers are subject to several rules to regulate the industry. *See Great Northern R. Co. v. O'Connor*, 232 U.S. 508, 509 (1914); *see also Interstate Commerce Comm'n v. Delaware, Lackawanna, & Western R. Co.*, 220 U.S. 235, 242-43 (1911). Such rules are absent in the private industry, which give carriers more ownership of the contract they choose to enter. For example, the Supreme Court notes that it is routine for common carriers to not know if they are contracting with an intermediary or a cargo owner. Accordingly, "a rule prompting downstream carriers to distinguish between cargo owners and intermediary shippers might interfere with the statutory and decisional law promoting nondiscrimination in common carriage." *Kirby*, 543 U.S. 14, 35. Such an issue is irrelevant in instances of private carriage. Thus, the Court is unconvinced that it should permit Cooper to apply the limitation provision against Plaintiffs.

Because the Court declines to apply *Kirby* to private carriage contracts and Cooper provides no other basis to extend the BTA's limitation provision against Plaintiffs KG Dongbu and DB Insurance Co. Ltd., the Court finds that Cooper cannot enforce the provision against them.

### c. Whether Marquette Can Enforce the Package Limitation Against Panobulk or Plaintiffs

Like Cooper, Marquette argues that it is entitled to enforce the limitation provision against Plaintiffs and Panobulk pursuant to *Kirby*. Because the Court holds that *Kirby* is inapplicable to the current matter, Marquette must have some alternate justification for the Court to find that Marquette is entitled to the BTA limitation protection. Since it does not do so to support its claim against Plaintiffs, the Court finds that Marquette cannot enforce the limitation against Plaintiffs.

Regarding its enforceability against Panobulk, Marquette alternatively argues that it should benefit from the provision because it stepped into the shoes of Cooper for purposes of fulfilling the BTA. Marquette cites *Pure Oil Co. v. M/V Caribbean* for support, in which the court held a

carrier's subcontractor could enjoy the benefit of a limitation provision found in a contract between the carrier and the cargo owner. 235 F. Supp. 299 (W.D. La. 1964). In that case, a maritime collision occurred involving a Brent Towing Company ("Brent Towing") tug pulling a barge and another tug owned by Caribbean Towing Company ("Caribbean"). The barge, owned by Silvey-Taylor Barge Company ("Silvey Taylor"), was carrying petroleum owned by Pure Oil. Accordingly, Pure Oil filed suit against Caribbean for damages, which resulted in several impleader, libel, and cross-libel claims involving all of the parties. Of relevance, Brent Towing filed a cross-libel claim against Pure Oil seeking to enforce a liability provision found in the contract between Silvey-Taylor and Pure Oil as those two parties had originally contracted to move the cargo. Relevant parts of the limitation provision in that contract provide:

INSURANCE AND MARITIME PERILS:

[Pure Oil] shall and it does hereby agree to hold [Silvey-Taylor], its tow, masters, crew, agents and employees harmless for claims for cargo loss, damage or contamination whether arising or resulting from an act of neglect or default in the navigation or management of the vessel, including but not limited to . . .peril, danger or accident of navigable waters or from any other cause whatsoever kind arising.

*Id.* at 303.

However, after Silvey-Taylor's tug became inoperative, it contracted with Brent Towing, for a consideration of 65% of the revenue collected for the cargo transport, to provide a tug to finish the petroleum delivery. *Id.* Pure Oil consented to this substitution. *Id.*

Accordingly, the court held that Brent Towing was entitled to limit its liability to Pure Oil because it fulfilled Silvey-Taylor's obligations to Pure Oil. It further noted that under these circumstances "where the parties contract freely, at a fair rate which expressly takes into consideration economic factors bearing upon the services performed, public policy does not require that the provision of this contract be stricken." *Id.* at 305. The above findings paired with

17

the fact that Pure Oil agreed to the substitution lead the court to conclude that Brent Towing could enjoy the protection of the limitation provision found in the Pure Oil and Silvey-Taylor contract.

Marquette's reliance on *Pure Oil* misses the mark. First, the Court notes that the limitation provision in the Pure Oil contract to be much broader than the BTA's limitation clauses. The expansive Pure Oil Clause provided that Pure Oil "shall and it does herby agree to hold [Silvey-Taylor], its tow, masters, crew, agents and employees harmless for claims for cargo loss. . ." *Id.* at 303. Here, on the other hand, Paragraphs 24 and 42 expressly provide that that only the Carrier's liability is limited to $500 per package in the event of cargo damage for which the Carrier—not Carrier Party—could be found liable. Of note, the BTA expressly identifies "Carrier" in Paragraph 1 as Cooper and defines "Carrier Party" in Paragraph 26:

> 26. Carrier and Shipper Parties: Carrier and its affiliates and its and their employees, vendors, vessels, contractors, subcontractors at any tier or agents shall be referred to as a "Carrier Party" . . .

R. Doc. 39-2 at ¶ 26.

Based on these definitions, the Court finds that Marquette would fall under "Carrier Party" as though affiliated, it is an entity distinct from Cooper. As such, the Court finds that if Cooper wished for Paragraphs 24 and 42 to extend to Carrier Parties, it could have expressly done so as it has in other paragraphs of the BTA. *See* R. Doc. 39-2 at ¶ 44 ("Indemnity: Shipper shall protect, defend, indemnify and hold *Carrier Parties* . . . harmless from and against all losses . . . arising from or related to (1) Shipper's breach of this Agreement, and or (ii) the fault . . . of Shipper. . .") (emphasis added). Without any statement in the BTA indicating that the limitation extends to a Carrier Party, this Court cannot grant Marquette's wish to find that Paragraph 26 operates as a Himalaya Clause.

Next, Marquette argues that like Brent Towing, it substituted into Cooper's place to furnish

Cooper's obligations under the BTA and that Panobulk approved this substitution in Paragraph 30 of the BTA. That paragraph provides:

> 30. Transport of Barges: Carrier shall not be bound to transport a barge loaded with Shipper's cargo by any particular towboat or in time for a particular market.
>
> If due to operating conditions, it is necessary in the judgment of Carrier to delay movement while in transit, Carrier reserves the right to do so. . . . under no circumstances shall Carrier be liable for any loss, damage, or expense incurred by Shipper or others by reason of delay.

R. Doc. 39-2 at ¶ 30.

This argument also fails. First, the Court finds tenuous that the statement "Carrier shall not be bound to transport a barge loaded with Shipper's cargo by any particular towboat" suggests that Panobulk approved any and all towboat substitutions. Further, unlike the substitution in *Pure Oil* where Silvey-Taylor and Brent Towing contracted with consideration, there is no evidence of a substitution contract with consideration between Cooper and Marquette here. Thus, the Court cannot take into consideration the public policy factors that were present in *Pure Oil.* Even if the Court were to hold that Marquette furnished Cooper's obligations to Panobulk under the BTA, this would not overcome the barrier that the BTA's express limitation provisions only apply to the Carrier and not Carrier Parties.

Accordingly, the Court remains unconvinced that the BTA's limitation provisions extend to Marquette. Thus, the Court finds that Marquette cannot enforce the BTA's package limitation against either Panobulk or Plaintiffs.

At this juncture, the Court has held that Cooper is entitled to enforce the package limitation against Panobulk pursuant to the BTA, but that Cooper is not entitled to enforce the provision against Plaintiffs. The Court has also held that Marquette cannot enforce the provision against either Panobulk or Plaintiffs. Accordingly, the Court need not discuss Marquette's request to

enforce the provision against Coastal's claims for contribution for Panobulk's and Plaintiffs' claims against Coastal because they are rendered moot. It follows that the Court need not discuss Cooper's request to enforce the provision against Coastal claims for contribution for Plaintiffs' claims against Coastal. All that is left to discuss is Coastal's motion for partial summary judgment against Cooper pursuant to its contribution claims for its potential liability to Panobulk and Cooper's request to enforce the package limitation against Coastal pursuant to those same claims.

### d. Whether *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994) is Applicable to the Instant Matter

Because the Court finds that Cooper can enforce the package limitation against Panobulk, Coastal argues that it is entitled to a pro rata reduction in its share of liability under *AmClyde*. The Court declines to comment on the applicability of *AmClyde* to the present case because the Court is not currently considering the issue of liability, rather it presently focuses on the enforceability of a limitation provision. It has yet to be determined who is liable for the damage to Plaintiffs' cargo and further, much of the Supreme Court's discussion in *AmClyde* centered around the enforcement of provisions found in a settlement agreement. Because the provision of moment is found in a private contract for affreightment and the liability of the parties remains unresolved, the Court finds that any opinion it may have on *AmClyde* would be premature.

### e. Whether Cooper Can Enforce the Package Limitation Against Coastal for Coastal's Contribution Claim Against It

In its second motion for partial summary judgment, Cooper argues that it should be entitled to enforce the limitation provision against Coastal's contribution claims for Coastal's alleged liability to Panobulk. The Court finds this argument unavailing.

The Court holds that Cooper cannot enforce the package limitation provision against Coastal because Coastal was not a party to the BTA. Law binding on this court holds that "[u]nder

the general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract because that party never agreed to the terms set forth therein." Further, Cooper does not provide evidence that would support enforcing the limitation provision against Coastal. Accordingly, the Court declines to distort basic principles of contract law to find the BTA to be binding on a litigant that had no bargaining rights in and was not a party to the contract.[8] Thus, the Court denies Cooper's second motion for summary judgment.

## V.      CONCLUSION

For the foregoing reasons, Cooper's Motion for Partial Summary Judgment, R. Doc. 39, is **GRANTED**, in part, and **DENIED**, in part. Cooper's Motion for Partial Summary Judgment, R. Doc. 83, is **DENIED**. Marquette's Motion for Partial Summary Judgment, R. Doc. 80, is **DENIED**. Coastal's Motion for Partial Summary Judgment, R. Doc. 49, is **DENIED AS PREMATURE**. Should the issue of liability of the parties come before the Court, Coastal reserves the right to re-urge its motion for partial summary judgment.

New Orleans, Louisiana this 15th day of March, 2024.

_____
United States District Judge

---

[8] If the parties disagree about the amount of damages each party is responsible for after the issue of liability has been resolved, the parties reserve the rights to re-urge these arguments for the Courts to settle at that time. However, as stressed previously, the issue of liability is not before the Court at this time.